UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN J. OTROMPKE,

                        Plaintiff,

          -against-

THE FIRST DEPARTMENT COMMITTEE ON
CHARACTER AND FITNESS; THE NEW
YORK BOARD OF LAW EXAMINERS;
"JOHN DOE" PRESIDENT OR CHIEF
EXECUTIVE OF THE NEW YORK BOARD
OF LAW EXAMINERS; LETITIA JAMES,

                      Defendants.

22-CV-4676 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

       Plaintiff brings this action *pro se* under 42 U.S.C. § 1983, asserting that Defendants have violated his rights under the First, Fifth, and Fourteenth Amendments. Plaintiff alleges that he has submitted a completed application for admission to the New York State Bar; he has "postponed" his scheduled hearing with a subcommittee of the Committee on Character and Fitness of the Appellate Division, First Department, and as yet has no decision on his application. This is Plaintiff's second suit in this Court arising from his efforts to be admitted as an attorney in New York. He has also brought suits regarding attorney admissions in other states but has not been admitted to the bar of any state.

       On July 6, 2022, Plaintiff withdrew his application to proceed *in forma pauperis* and paid the filing fee for this matter. The Court dismisses the complaint for the reasons set forth below.

## STANDARD OF REVIEW

       The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17

(2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court also may dismiss an action for failure to state a claim, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

More than twenty years ago, in 2000, Plaintiff graduated from DePaul University College of Law. (ECF 2 at 7.) Within a few years thereafter, the Illinois "Committee on Character and Fitness deemed him unfit to practice law, citing his failure to acknowledge on his bar and law school applications his multiple arrests and firings over the previous decade." *Otrompke v. Skolnik*, 15-3875 (7th Cir. June 24, 2016). Plaintiff then sued the Illinois Board of Admissions in federal court twice, and lost. *See Otrompke v. Chairman of the Committee on Character & Fitness for the First Judicial District of Illinois*, 2005 WL 3050618 (N.D. Ill. Nov. 7, 2005); *Otrompke v. Hill*, 28 F. Supp. 3d 772, 781 (N.D. Ill.), *aff'd*, 592 F. App'x 495, 497 (7th Cir. 2014). Plaintiff also sued the Executive Director of the Indiana Board of Law Examiners and the Indiana Attorney General, but that suit was dismissed for lack of standing because Plaintiff had not applied for admission to the Indiana State Bar. *See Otrompke v. Skolnik*, 14-CV-296 (N.D. In.), *aff'd*, No. 15-3875 (7th Cir. June 24, 2016)

In July 2017, Plaintiff took the Uniform Bar Examination in New York and passed. (ECF 2 at 8, ¶ 53.) In June 2018, he passed the New York Law Examination. (*Id.* at ¶ 54.) On July 19,

2019, Plaintiff submitted an application to the Committee on Character and Fitness of the Appellate Division, First Department, for admission New York State Bar. (*Id.* at 8, ¶ 55.) While this application was pending, Plaintiff sued the "First Department Committee on Character and Fitness," the New York Board of Law Examiners and its Executive Director, the New York State Attorney General, and George Royalle, who was assisting in the review of Plaintiff's application for admission. *See Otrompke v. The First Department Committee on Character and Fitness*, No. 20-CV-3839 (S.D.N.Y.). That suit was dismissed without prejudice for lack of standing because Plaintiff had not yet submitted a completed application and the complaint did not plead facts showing that he had suffered an injury in fact.[1] The Court of Appeals for the Second Circuit affirmed the dismissal of that action. *Otrompke v. The First Dep't Comm. on Character & Fitness*, No. 20-4107, 2021 WL 5764221, at *2 (2d Cir. Dec. 6, 2021).

In this suit, Plaintiff alleges that, as of June 30, 2021, his application to the Committee on Character and Fitness ("the Committee") for admission to the New York State Bar was complete. (ECF 2 at 2, ¶ 6). He was notified on November 3, 2021, that "further review of his bar application" was required. (*Id.* at ¶ 7.) On January 28, 2022, he learned that a video "hearing" with three subcommittee members was scheduled for April 5, 2022.[2] (*Id.* at 8.) The January 28, 2022 notice advised Plaintiff that the burden of proof as to an applicant's character and fitness

---

[1] In that complaint, Plaintiff suggested speculatively that (1) his complaint might be delayed if he submitted it, and (2) the Committee may have impermissibly restricted speech in the past when it found, in *In re Anonymous,* 66 A.D.3d 1081 (2009), that an applicant "lacked the prerequisite moral character," and might treat him the same way.

[2] A letter from the Committee, attached to the complaint, states that Plaintiff initially refused to proceed unless counsel was appointed to represent him, and he declined offers to schedule the subcommittee hearing in February or March 2022, choosing instead to schedule it in April 2022. (ECF 2 at 15-16.)

rests with the applicant. Plaintiff contends that this "deprives him of a fair hearing" and that a "significant property interest is at stake." (*Id.* at 4.)

In March 2022, he sent a document to the Committee, styled as a "Bill of Particulars," seeking more information about the hearing. In response, the Committee notified him that the hearing would address, "but was not limited to, questions regarding the extended time since graduation from law school, your employment history, applications for admission to the bar in Wisconsin and Illinois, arrest record, tax debts, and use of false names." (*Id.* at 6, ¶ 38.) Plaintiff argues that he has a right to a hearing before a quorum of the full Committee and that his application, which by his count has been pending for 34 months, has been unreasonably delayed.

On "April 4, [2022,] Plaintiff postponed the meeting with the three members of the committee and their attorney, to address those present concerns of which he has notice, and to figure out where to bring his as applied constitutional challenge." (*Id.* at 7, ¶ 40.) No action has been taken on Plaintiff's application since his request to postpone the video hearing.

Plaintiff asks this Court to admit him to the New York State Bar and to declare that Defendants have violated his rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

## DISCUSSION

### A.  Rules Governing Admission to the New York State Bar

Under New York law, the appellate division in each judicial department appoints lawyers to a committee charged with investigating the character and fitness of each applicant and with reaching a determination as to whether the applicant is entitled to admission to the bar. N.Y.C.P.L.R. §§ 9401, 9404; *see also* N.Y. Judiciary Law § 90.[3] During the investigation, the

---

[3] N.Y. Judiciary Law § 90 provides that, where other requirements have been fulfilled, the appellate division shall admit an applicant to practice as an attorney "if it shall be satisfied that

committee may require the applicant to furnish additional information or proof of good character. 22 N.Y.C.R.R. § 602.1(d). If the committee fails to approve an application following investigation, the committee or a subcommittee is required to hold a hearing at which the applicant is given an opportunity to call and cross-examine witnesses, and to challenge and controvert adverse evidence. 22 N.Y.C.R.R. § 602.1(h). Following the hearing, the committee must render a decision recommending approval, disapproval or deferral of action on the application. 22 N.Y.C.R.R. § 602.1(j).

If the committee's decision is adverse to the applicant, the applicant may petition the appellate division for an order granting the application for admission to practice notwithstanding the committee's decision. 22 N.Y.C.R.R. § 602.1(m). Where it is claimed that the committee has unreasonably delayed action on an application for admission to practice, the applicant may petition the appellate division, for an order granting the application notwithstanding the committee's failure to act on it, or for other appropriate relief. 22 N.Y.C.R.R. § 602.1(n).

## B.      State Defendants

Plaintiff sues two entities that qualify as arms of the State of New York: The New York Board of Law Examiners and the Committee on Character and Fitness of the Appellate Division, First Department (named as "The First Department Committee on Character and Fitness"), which operate as units of the New York Court of Appeals and the Appellate Division, respectively. *See* Jud. Law §§ 53, 56 (Board), § 90(1)(c) (Committee); Rules of App. Div., 1st Dep't § 602.1(b) (Committee). As units of the State of New York Unified Court System, these

---

such person possesses the character and general fitness requisite for an attorney and counsellor-at-law." Rule 9404 provides in relevant part that "no person shall be admitted to practice without a certificate from the proper committee that it has carefully investigated the character and fitness of the applicant and that, in such respects, he is entitled to admission." N.Y.C.P.L.R. § 9404.

entities are entitled to Eleventh Amendment immunity from suit. *See T.W. v. New York State Bd. of Law Examiners*, 996 F.3d 87, 92 (2d Cir. 2021) (holding that "the Board is part of the Unified Court System" and recognizing the Board of Law Examiners' Eleventh Amendment immunity); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (holding that state court is entitled to Eleventh Amendment immunity).[4]

In addition, Plaintiff sues New York State Attorney General Letitia James, who is also, at least for claims against her in an official capacity, entitled to Eleventh Amendment immunity from suit. *See Gollomp*, 568 at 366 ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents."). Plaintiff includes no allegations in his complaint against Defendant James and does not allege that she was personally involved in violating his rights. Plaintiff's claims against Defendant James in her individual capacity therefore must also be dismissed because he has not alleged facts showing that she personally violated his rights. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

Finally, Plaintiff also sues "John Doe" Director of the Board of Law Examiners. Plaintiff seeks injunctive relief (ECF 2 at 8). Under *Ex parte Young*, 209 U.S. 123 (1908), a suit for prospective injunctive relief can proceed against a state official even where the official would otherwise be entitled to Eleventh Amendment immunity. It therefore appears that Plaintiff's claims can proceed against this Defendant. Accordingly, the Court addresses Plaintiff's claims.[5]

---

[4] Moreover, under Section 1983, "a state is not a person," *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989), and Section 1983 claims against these two state entities therefore also fail to state a claim.

[5] There does not appear to be any dispute arising from Plaintiff's bar examinations, which were administered by the New York Board of Law Examiners. Instead, Plaintiff's claims arise

C.      **Standing to Sue**

The jurisdiction of the federal courts is limited to resolving "cases and controversies."

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "[W]hether the plaintiff has made

out a 'case or controversy' between himself and the defendant . . . is the threshold question in

every federal case, determining the power of the court to entertain the suit." *Id.* "[T]o ensure that

this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their

standing as the proper part[ies] to bring suit." *Id.* at 89 (citations omitted). The burden of

establishing standing to sue rests with the party bringing the action. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 561 (1992). "If plaintiffs lack Article III standing, a court has no subject

matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v.*

*Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

To demonstrate standing, a plaintiff must show that (i) he has personally suffered some

actual or threatened injury as a result of defendant's conduct; (ii) the injury is fairly traceable to

defendant's conduct; and (iii) the injury is likely to be redressed by the requested relief. *Vall.*

*Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S.

464, 472 (1982). "To establish injury in fact, a plaintiff must show that he or she suffered 'an

invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 560)); *see also Mahon*, 683 F.3d at 62

---

from issues with the review of the Committee. If the Director of the Board of Law Examiners
cannot provide the requested injunctive relief, he may not be the proper defendant. *See Mendez v.*
*Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (holding that a party who "has no connection with the
enforcement of [the challenged laws], . . . cannot be a party to this suit."). These facts, however,
are not clear from the complaint.  If necessary, Plaintiff could amend his complaint to name an
official associated with the Committee for his claim for injunctive relief.

("Demonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff herself is thus generally an essential component of Article III standing.").

    1.    First Amendment Claims

Plaintiff suggests that his application for admission to the New York State Bar will be denied in violation of his rights under the First Amendment. Plaintiff repeats the same vague claims that were rejected in his first suit: (1) his application will be denied, just as the applicant in *In re Anonymous,* 66 A.D.3d 1081 (2009), had his application denied, and Plaintiff "seeks discovery" into whether that applicant was denied as a result of his speech, and (2) unspecified character and fitness rules are unconstitutionally vague and have chilled the exercise of his First Amendment rights.

On appeal from the dismissal of Plaintiff's first suit, the Second Circuit concluded that Plaintiff lacked standing to assert such claims because an injury is not imminent where "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Otrompke*, No. 20-4107 (citing *Lujan*, 504 U.S. at 570 n.5). The Second Circuit further held that Plaintiff's alleged First Amendment injury was purely speculative because he provided no facts in that complaint supporting the claim that unconstitutional considerations will play a role in Defendants' handling of his application. To the extent that Plaintiff intended to assert standing based on a chilling effect, the Second Circuit found, that complaint was devoid of any allegations showing such an effect.

Here, Plaintiff's allegations in this complaint that he will suffer some First Amendment injury are likewise purely speculative. He therefore lacks standing to pursue his First Amendment claims.[6]

2.      Fifth Amendment Claims

Plaintiff invokes the Fifth Amendment, without explanation, as a basis for his claims. The Fifth Amendment privilege against self-incrimination "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Allen v. Illinois*, 478 U.S. 364, 368 (1986). Plaintiff does not plead facts showing that he has been deprived of the privilege against self-incrimination. To the extent that Plaintiff is speculating that he may be required to do so during the bar admission process, he lacks standing because there are no allegations showing that he has suffered any Fifth Amendment injury that is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 578 U.S. at 339. Plaintiff's Fifth Amendment claims must therefore be dismissed for lack of standing.[7]

---

[6] If Plaintiff's bar application is denied, and he contends that unconstitutional considerations played some role in that decision, Plaintiff's remedy is an appeal within the state court system. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 485 (1983). ("[A] claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission . . . may be heard [in federal court], if at all, exclusively by the Supreme Court of the United States" on direct appeal from a state court decision).

[7] Plaintiff's Fourteenth Amendment claims – that he has been harmed by the 34-month delay in adjudicating his application for admission, that Judiciary Rule § 90 improperly imposes on applicants the burden of showing good character, and that notice of the matters requiring further investigation was inadequate –do not rely on speculation, and he therefore appears to have standing to assert these claims, even if the claims suffer from additional defects. These claims are addressed below.

**D.    Younger Abstention**

Under *Younger v. Harris*, 401 U.S. 37, 43-44 (1971), federal courts do not abstain simply because a pending state court proceeding involves the same subject matter. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) ("[T]here is no doctrine that . . . [the] pendency of state judicial proceedings excludes the federal courts.")).

Rather, abstention under *Younger* is required in only three classes of parallel proceedings: (1) ongoing state criminal prosecutions; (2) "particular state civil proceedings that are akin to criminal prosecutions"; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78.[8] Although the Second Circuit has not addressed the issue, at least one district court in this Circuit has concluded that a litigant's challenge to the state's process for admission as an attorney "falls within the third exceptional class of proceedings because an important state interest in the oversight of the legal profession is implicated: an attorney admitted to the state bar is an officer of the court." *Grundstein v. Kasper*, No. 5:17-CV-75, 2017 WL 11504217, at *3 (D. Vt. Dec. 20, 2017), *aff'd*, 748 F. App'x 425 (2d Cir. 2019) (declining to address *Younger* abstention where state action was no longer pending, and affirming based on *res judicata*);[9] *see*

---

[8] The second category includes state-initiated attorney disciplinary proceedings for violations of state ethics rules because these are sufficiently akin to a criminal prosecution. *Sprint*, 571 U.S. at 79 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423 (1982)).

[9] The Supreme Court has identified two types of orders that come within the third category of abstention, for "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions": civil contempt orders and orders requiring the posting of bonds pending appeal. *Sprint*, 571 U.S. at 79; *see also Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022) ("[F]ederal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments.").

*also Wilson v. Emond*, 373 F. App'x 98, 100 (2d Cir. 2010) (affirming, pre-*Sprint*, dismissal on *Younger* abstention grounds of action challenging denial of bar application); *Mullane v. Massachusetts Bd. of Bar Examiners*, No. 20-CV-11382 (DJC), 2021 WL 4132579, at *2 (D. Mass. Sept. 10, 2021) (bar admission "proceeding falls into the third category to which *Younger* extends because the Massachusetts Supreme Judicial Court ("SJC") retains ultimate authority to decide a person's fitness to practice law in the Commonwealth."). The Court therefore assumes for purposes of this order that a state ethics investigation for admission to the bar as an attorney, such as the one at issue here, is one of the exceptional parallel proceedings that requires federal courts to abstain.

Abstention is thus required here unless one of two narrow exceptions to the *Younger* abstention doctrine applies: (1) bad faith, *i.e.*, "cases of proven harassment or prosecution undertaken by state officials in bad faith without hope of obtaining a valid conviction," *Perez v. Ledesma*, 401 U.S. 82, 85 (1971), and (2) extraordinary circumstances, *i.e.*, where "'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it ... creating an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975). A plaintiff "bears the burden of establishing that one of the exceptions applies." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). Plaintiff does not plead facts showing that either exception applies.

Plaintiff initiated the application for admission to the New York State Bar, and he does not plead any facts showing that the state proceeding, or the manner in which it is being handled, "is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Constr. Co.*, 282 F.3d at 197. He also does not adequately allege that 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it. *See, e.g., Wilson*

373 F. App'x at 100 ("Nothing precluded Wilson from pleading his constitutional claims in his state court complaint appealing the denial of his bar application (in fact, he did so), and to the extent those claims were dismissed by the Connecticut Superior Court, he was free to appeal that decision.").

The Court therefore abstains, under *Younger*, from adjudicating Plaintiff's claims implicating his particular bar admission proceedings. This includes Plaintiff's claims that he was denied Due Process because (1) he received inadequate notice of the matters under investigation; (2) he is entitled, under state law, to review by the full Committee at the investigation stage; and (3) his application has been pending before the Committee for 34 months and has been unreasonably delayed (*id.* at 6, ¶ 33).[10] These claims for injunctive relief are dismissed without prejudice under *Younger*.

The Court does not abstain from addressing Plaintiff's sole claim that is independent of his application for admission – that is, his general attack on N.Y. Judiciary Rule § 90 or other rules that impose on applicants the burden of showing good moral character.

### E.    Challenge to Rule Imposing Burden on Applicants

Plaintiff argues that "[t]he State rules, laws, and procedures are . . . facially unconstitutional because, on information and belief, they place the burden of proof on the bar applicant by clear and convincing evidence, which is an extremely onerous burden and is 100% wrong because it violates due process under Amnds. V and XIV." (ECF 2 at 3, ¶ 18.) He

---

[10] In fact, Plaintiff alleges that his application was not completed until June 30, 2021 (ECF 2 at 2, ¶ 6), less than twelve months ago, and nearly two years after he first submitted his partial application in July 2019. Moreover, a subcommittee hearing on Plaintiff's application was set for April 5, 2022, but he "postponed" the meeting one day before it was scheduled to take place. Plaintiff's allegations thus show that he was responsible for the bulk of the delay.

contends that "a significant property interest is at stake, regardless of the outcome of the hearing." (*Id.* at 4, ¶ 22.)

The Supreme Court has distinguished between cases "seeking review in a federal district court of a state court's final judgment in a bar admission matter and [cases] challenging the validity of a state bar admission rule." *Feldman*, 460 U.S. at 483-84. The Supreme Court explains that:

> There is a subtle but fundamental distinction between two types of claims which a frustrated bar applicant might bring to federal court: The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission. [W]hile federal courts do exercise jurisdiction over many constitutional claims which attack the state's power to license attorneys involving challenges to either the rule-making authority or the administration of the rules, . . . such is not true where review of a state court's adjudication of a particular application is sought. [T]he latter claim may be heard, if at all, exclusively by the Supreme Court of the United States.

*Id.* at 485. The rationale for this difference is that "state supreme courts may act in a non-judicial capacity in promulgating rules regulating the bar. . . . Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding." *Id.* at 486.

Here, Plaintiff alleges that New York's rules violate the rights of applicants, including him, by placing the burden of proof on applicants to establish their character and fitness to practice law. Such a general attack on the constitutionality of a rule can be heard in the district court because it does not seek review of the adjudication of a particular application.

On the merits, however, this claim fails. Plaintiff's articulated basis for this claim is that "the burden of proof should be on the government by clear and convincing evidence because the Committee seeks to try issues that restrict the bar applicant's rights and could give rise to lifelong moral stigma." (ECF 2 at 4, ¶ 21.) Plaintiff attempts to extend the reasoning of the Supreme

Court in *Waldman*, which held that a loyalty oath for lawyers was permissible where it did not impose a burden of proof on an applicant to show that she "believes in the form of the government of the United States and is loyal to such government" or impermissibly inquire into applicant's political beliefs. *Wadmond*, 401 U.S. at 726.

The Supreme Court has already held, however, that there is "no constitutional infirmity in New York's statutory requirement that applicants for admission to its Bar must possess 'the character and general fitness requisite for an attorney and counsellor-at-law.'" *L. Students C.R. Rsch. Council, Inc. v. Wadmond*, 401 U.S. 154, 159 (1971); see also *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 239 (1957) ("State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law.").

Moreover, "[a]n applicant for admission to the bar bears the burden of proof of 'good moral character'—a requirement whose validity is not, nor could well be, drawn in question." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 40-41 (1961); *see also In re Willis*, 288 N.C. 1, 15 (1975) ("Facts relevant to the proof of his good moral character are largely within the knowledge of the applicant and are more accessible to him than to an investigative board. Accordingly, the burden of proving his good moral character traditionally has been placed upon the applicant in this State and in other jurisdictions."). Plaintiff's claim that New York rules imposing the burden of showing good moral character on applicants are unconstitutional must therefore be denied for failure to state a claim on which relief can be granted.

### F.    Leave to Amend

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*,

657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff's complaint repeats claims and arguments that have arisen in similar contexts and have already been rejected by this and other courts.

Plaintiff lacks standing to bring claims in which he speculates that Defendants may violate his constitutional rights in adjudicating his application for admission to the bar, and his remaining claims must either be raised in the state court, or fail to state a claim on which relief can be granted. Because Plaintiff's complaint gives no indication that it can be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses without prejudice for lack of standing Plaintiff's Section 1983 claims under the First and Fifth Amendments. The Court abstains under *Younger* from adjudicating Plaintiff's Section 1983 claims for violations of the Fourteenth Amendment right to due process and dismisses these claims without prejudice. The Court dismisses Plaintiff challenge to the constitutionality of New York Judiciary Law § 90, and other rules imposing on applicants to the New York State Bar the burden of showing character and fitness, for failure to state a claim on which relief can be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   July 11, 2022
        New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

15