IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| John J. Otrompke, JD,<br>  Plaintiff | ) <br> ) <br> ) | |
| vs. | ) <br> ) | |
| *The Judges of the New York Court Of Appeals* Hon. Janet DiFiore, Anthony Cannataro, Jenny Rivera, Madeline Singas, Leslie E. Stein, Michael Garcia, Shirley Troutman, Rowan D. Wilson; *the Justices of the Appellate Division of the Supreme Court of New York for the First Department* Hon. Rolando T. Acosta, Dianne T. Renwick, Sallie Manzanet-Daniels, Judith J. Gische, Barbara R. Kapnick, Troy K. Webber, Cynthia S. Kern, Angela M. Mazzarelli, David Friedman, Ellen Gesmer, Jeffrey K. Oing, Anil C. Singh, Peter H. Moulton, Lizbeth González, Tanya R. Kennedy, Saliann Scarpulla, Manuel J. Mendez, Martin Shulman, Julio Rodriguez III, Bahaati Pitt, John R. Higgitt; *Exec. Director of the NY Board Of Law Examiners* John J. McAlary, *the Chair of the NY Board of Law Examiners* Carmen Beauchamp Ciparick, *official members of the NY Board of Law Examiners* Hon. Bryan R. Williams E. Leo Milonas, Michael Colodner Leslie E. Stein; *Commissioners of the First Department Committee on Character and Fitness* Robert Wolff William Garcia, Paul Hart, and other unknown and unnamed members of the same Committee; *attorney for the same Committee* Veronica Guerrero; and *New York Attorney General* Letitia James, in their individual and official capacities,<br>  Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 22-CV-4676 <br><br> Hon. Chief Judge Laura Taylor Swain |

1

<u>First Amended Complaint</u>

<u>Declaratory and Injunctive Relief Under 42 USC 1983, US Const Am I, Am V, Am XIV, and the Ex Post Facto/Bills of Attainder Clause of Art 1, Section 9 and Declaratory Relief Under 28 U.S.C.A. § 2201 et seq.</u>

I.                                    Introduction

1. As this Court knows, Plaintiff John Otrompke is a current bar applicant in the state of New York.

2. The gravamen of this complaint, unlike the prior one, is that the challenged rules are facially unconstitutional, and violate 5th and 14th Amendment due process, because they place the burden of proof in the wrong place, by the wrong degree, among other reasons; this claim was never disposed of by <u>Law Students Civil Rights Research Council v. Wadmond</u>, 401 U.S. 154 (1971).

3. However, it would be unfair for this honorable to court to require the bar applicant to participate in a state court proceeding without knowing in what court (state or federal) he must make his as-applied Constitutional challenge and arguments (please see section 3 below).

4. In anticipation that the court might dismiss this complaint sua sponte, plaintiff, the bar applicant, has made certain legal arguments in section 3, and requests the opportunity to brief the court on standing issues, and apologizes if the complaint runs slightly long.

II.            <u>Developments Since the Dismissal of the First Complaint</u>

5. Plaintiff's previous federal complaint in this matter was dismissed last July for lack of standing because at the time of filing the Committee had not received all of the documents for his bar application (20-cv-03839; on appeal 20-4107).

6. Defendants admitted in their appellate brief that Plaintiff had submitted a complete bar application by June 30, 2021, when the Committee received all of the necessary documents.

7. On Nov. 3, 2021, Plaintiff received an email informing him that Robert Wolff, an official and interviewer with the Committee, had recommended further review of his bar application.

2

8. On January 28, Veronica Guerrero, the Committee's attorney, informed Plaintiff in a "Notice of Hearing" that what she referred to as a "hearing" would be conducted in his application before 3 members of the Committee via a video internet program on April 5, 2022.

9. Guerrero also informed the bar applicant that the Committee intended to ask him about efforts to repay back taxes.

10. Accordingly, plaintiff retained a law firm to help him negotiate back tax repayment terms on May 13, 2022.

11. This case, if moot, is capable of repetition yet evading review.

III. <u>The Bar Applicant's Power to Reserve His As-Applied Challenge for the Federal Courts Turns on Whether the Challenged Rules and Procedures are Facially Unconstitutional</u>

12. In this Complaint, as in the prior one, plaintiff wishes to reserve all of these Constitutional arguments for the federal court, as is his right, but can't proceed in state court without knowing where to make his as-applied challenge, on penalty of accidentally waiving those arguments.

13. In the course of the previous litigation, the regulator pointed out local case law suggesting that a federal Constitutional plaintiff may not reserve her or his <u>as-applied</u> Constitutional challenges by an <u>England</u> reservation when the federal court abstains under <u>Younger v Harris</u>.

14. This court cannot abstain under <u>Younger</u> without considering whether state law is "patently invalid." <u>Younger v Harris</u>, 401 U.S., at 53-54, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

15. The Committee's proceedings and rules are patently, and transparently invalid because the Committee claims that "the practice of law is not a right, but a privilege" (see paragraphs 65-66, below).

16. That notion is patently invalid, because the right to practice law or another learned profession has been protected by the US Constitution as against the states since even before Am. XIV was enacted. <u>Ex parte Garland</u>, 71 U.S. 4 Wall. 333 (1866); <u>Cummings v Missouri</u>, 71 U.S. 4 Wall. 277 (1867).

17. The principle that "the practice of law is not a right, but a privilege" is also patently and transparently invalid because the Supreme Court long ago "fully and finally rejected the wooden distinction between 'rights' and 'privileges,'" Board of Regents v Roth, 408 US 564, 571 (1972).

18. The state rules, laws and proceedings are also facially Unconstitutional, because, on information and belief, they place the burden of proof on the bar applicant by clear and convincing evidence, which is an extremely onerous burden, and in fact is 100% wrong, because it violates due process under Ams. V and XIV, and other Sources of Constitutional law.

19. The Committee's "Notice of Hearing" states, "Please be advised that the burden of proof as to an applicant's character and fitness for admission to the New York State Bar - including, without limitation, the items enumerated in a Notice of Hearing - rests upon the applicant."

20. For example, why should the bar applicant have to prove by clear and convincing evidence that he does not suffer from any medical condition referred to as "alcoholism," when that seems to contradict the spirit of Wisconsin v. Constantineau, 400 U.S. 433 (1971)?

21. In fact, the burden of proof should be on the government by clear and convincing evidence, because the Committee seeks to try issues that restrict the bar applicant's rights and could give rise to a lifelong moral stigma. Santosky v Kramer, 102 S Ct 1388, 1395 (1982); Cruzan v Director, Missouri Dept. of Health, 110 S. Ct. 2841, 2854 (1990); Addington v Texas, 99 S. Ct. 1804, 1808 (1979).

22. Because of this situation, nobody- not a single bar applicant- ever gets a fair hearing before the Committee on Character and Fitness, not even if they prevail. "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, *whatever the ultimate outcome of a hearing.* . . ." Fuentes v. Shevin, 407 U.S. at 407 U. S. 87, cited by Carey v Piphus, 435 U.S. 247, 266 (1978) (emphasis added).

4

23. The challenged rules are also transparently invalid because they are Unconstitutionally vague and overbroad, under the first and second prongs of Supreme Court vagueness doctrine, and individuals must necessarily disagree as to their application.

24. Because the Supreme Court cases on burden of proof cited in paragraph 21 were not decided at the time of <u>Law Students Civil Rights Research Council v Wadmond</u>, 401 US 154 (1971), this facial challenge was not decided by <u>Wadmond</u>.

25. The court also cannot order <u>Younger</u> abstention without deciding whether the case fits within one of the three categories of <u>Sprint Communications v Jacobs</u>, 571 U.S. 69 (2013).

26. Therefore, the court should not abstain under <u>Younger v Harris</u>.

27. The court should also not abstain under administrative abstention theories, because some theories of abstention were decided before mandatory Constitutional review in the Supreme Court was abolished by Congress in 1988, and would now cut off a federal Constitutional plaintiff's power to return to federal court at all.

28. Plaintiff also should have standing for nominal and other damages for denial of a fair hearing, and also seeks to assert jus tertii, or third party standing, on behalf of his fellow bar applicants, who fail to understand the Constitutional defects in the challenged rules.

29. Therefore, because the state regulator is in grave danger of suffering the indignity of having its Constitutional misconceptions corrected by the federal courts, this honorable court might abstain under <u>Pullman</u>, rather than <u>Younger</u>, so that the court might initially refrain from deciding the facial challenge before the state law issue is decided, the bar applicant should be able to reserve his as-applied challenges for the federal court.

30. However, the court nevertheless should not abstain under <u>Railroad Commission v. Pullman Co.</u>, 312 U.S. 496 (1941), because that case was grounded in the fear that action by the federal courts could result in unrest between the states; whereas the likelihood that New York, so long

loyal to the Union, would secede just because the federal courts correct certain Constitutional flaws in a bar admission statute, seems attenuated.

31. If the federal courts rule that I must participate in a state court or Committee proceeding to try to get a New York attorney's license, I intend to do so.

32. In her emails of April 1, 2022, Guerrero acknowledged that the hearing she proposed would be held before fewer regulatory officials than a quorum according to Committee rules (N.Y.Ct.Rules, § 690.7), meaning that the panel would be unable to issue a final decision sufficient to give Plaintiff a right to judicial review.

33. Plaintiff also has a right to a hearing before a quorum of the full committee, because N.Y. Court of Appeals Rule § 690.14 contemplates that such proceedings shall last not longer than 9 months, and bar applicants have a right to a speedy deprivation hearing, yet the Committee apparently thinks these proceedings can go on interminably (and it has already been some 34 months since plaintiff submitted his bar application).

34. On January 18, Plaintiff asked Guerrero for notice of any allegations of wrongdoing that had been made against him, in the hope that that would allow him to prepare for the hearing.

35. Specifically, Plaintiff asked Guerrero in an email to be put on notice of "any conclusions of the investigatory body, allegations of wrongdoing that have been made against me, or of any rules or standards I may have violated, and/or any explicit and/or concrete steps I must take to receive an attorney's license."

36. On March 1, 2022, Plaintiff submitted to the Appellate Division of the New York Supreme Court for the First Department Committee, and to Ms. Guerrero, a Motion for a Bill of Particulars.

37. In their Notice of Hearing, the regulator stated: "The hearing will address your responses to the questions on the application including, **but not limited to**, questions regarding extended time

since graduation from law school, your employment history, applications for admission to the bar in Wisconsin and Illinois, arrest record, tax debts, and use of false names" (emphasis added).

38. By this response, the Committee attempts to avoid cabining their supposedly all-powerful discretion, and makes it harder for Plaintiff to plan for the 'hearing.'

39. Beyond seeking employment, getting on payment terms with his tax creditors and contacting the Lawyers Assistance Program, the regulator has provided him with no other notice of any present acts of wrongdoing or shortcomings that he can do anything about.

40. After thoroughly pondering the situation, on April 4, Plaintiff postponed the meeting with the three members of the Committee and their attorney, to address those present concerns of which he has notice, and to figure out where to bring his as-applied Constitutional challenge.

41. The regulatory agency has neither dismissed Plaintiff's bar application nor taken any other adverse action as a result of this postponement.

IV.  Background

42. Plaintiff graduated from DePaul University College of Law in 2000.

43. When I was called before the Committee on Character and Fitness in late 2000 in Cook County, Illinois, I was afraid the Committee would discriminate against me as a political dissident who associated with anarchists.

44. Plaintiff also associated with some Christian anarchists in December of 2021, inter alia, and would like to do so again, and now I would also like to associate with secular anarchists too once in a while, after this bar admission matter is finally complete.

45. At the time of Plaintiff's first bar application around 2000, I looked at the Illinois character and fitness law, but could make neither heads nor tails of it.

46. Therefore, I hired a lawyer.

47. In preparing me to meet with the committee in 2000, my lawyer "poisoned the well," that is, basically, he told me to lie.

48. At the time, I feared the federal courts would give me no relief.

49. Therefore, subsequent to 2000, I lied to the Committee, violating Rule of Professional Conduct 8.1.

50. When I was in law school, my main goal was to escape poverty, and if the Illinois bar regulators had drafted a rule that left open no possibility whatever that it could be used to engage in sub rosa discrimination, I would never have violated the Rules of Professional Conduct.

V.                              Past Developments

51. Previous challenges I filed in 2014 and 2016 to the Illinois and Indiana character and fitness rules were dismissed by the Seventh Circuit for lack of standing because I had not submitted a timely bar application.

52. So Plaintiff took the Multistate Professional Responsibility Exam again in August 2016.

53. I passed the Uniform Bar Exam in New York in July of 2017.

54. I passed the New York Law Exam in June of 2018.

55. I submitted a bar application in New York in July 2019.

56. I have also completed the viewing of a mandatory online legal education session called, "The Orientation to the Profession."

57. If this honorable court abstains, I would prefer to reserve all federal constitutional issues in this case for the federal courts, per England v. Louisiana Board of Medical Examiners, 375 U.S. 411 (1964).

VI.                             Statutory Background

58. New York Civil Practice Law & Rule s. 9404 provides, "Unless otherwise ordered by the appellate division, no person shall be admitted to practice without a certificate from the proper

committee that it has carefully investigated the character and fitness of the applicant and that, in such respects, he is entitled to admission."

59. Counsel for the Committee has also cited to New York Jud. Law 90(1)(a): "Upon the state board of law examiners certifying that a person has passed the required examination, or that the examination has been dispensed with, the appellate division of the supreme court in the department to which such person shall have been certified by the state board of law examiners, if it shall be satisfied that such person possesses the character and general fitness requisite for an attorney and counsellor-at-law and has satisfied the requirements of section 3-503 of the general obligations law, shall admit him to practice as such attorney and counsellor-at-law in all the courts of this state[.]"

60. N.Y. Court of Appeals Rule § 690.10 provides, "If the committee shall fail to recommend approval of the application following its own investigation, or following a recommendation submitted by the member or members conducting an investigation pursuant to designation that the application he disapproved or that action thereon be deferred, a hearing on the application shall be held expeditiously before the committee or a subcommittee of at least two members designated by the chairperson or acting chairperson."

61. N.Y. Court of Appeals Rule § 690.14. provides, "Where the hearing has been conducted by the committee, the committee shall make a recommendation, and where the hearing has been conducted by a subcommittee, the subcommittee shall render a report, within 60 days after the matter is finally submitted, unless the time is extended by consent of the applicant or order of the Appellate Division. The recommendation of the committee or the report of the subcommittee, as the case may be, may recommend approval or disapproval of the applicant or deferral of action on the application for a period not to exceed six months."

62. New York Judiciary Law § 90 provides: "Admission to and removal from practice by appellate division; character committees. 1.a. Upon the state board of law examiners certifying that a person has passed the required examination, or that the examination has been dispensed with, the appellate division of the supreme court in the department to which such person shall have been certified by the state board of law examiners, if it shall be satisfied that such person possesses the character and general fitness requisite for an attorney and counsellor-at-law and has satisfied the requirements of section 3-503 of the general obligations law, shall admit him to practice as such attorney and counsellor-at-law in all the courts of this state, provided that he has in all respects complied with the rules of the court of appeals and the rules of the appellate divisions relating to the admission of attorneys."

VII.     First Amendment and Other Possible Constitutional Implications

63. In one case decided by the New York Committees in 2009, an individual was found to lack the prerequisite moral character for bar admission because that applicant "engaged in a pattern of inappropriate and offensive behavior at work and in law school extending from 1990 until recently," Matter of Anonymous (NY Appellate Division, Third Department, Oct. 1, 2009, 66 A.D.3d 1081 *; 885 N.Y.S.2d 648 **).

64. Before this honorable court makes a determination about abstention, Plaintiff seeks discovery into that Anonymous case cited above to see whether the "offensive and inappropriate behavior" related to speech, expression or opinion.

65. While Plaintiff was completing the legal education requirement described in para. 56 above ("Orientation to the Profession"), Plaintiff heard the Committee's attorney, defendant Veronica Guerrero, say that "The practice of law is not a right, but a privilege," which is the biggest lie ever told in a character and fitness context.

66. I also heard a bar regulatory official say the same thing while I was engaging in mandatory study for the New York Law Exam.

67. Our society is governed by laws, not men.

VIII.  DECLARATORY RELIEF AND PRELIMINARY AND PERMANENT INJUNCTION

68. On information and belief, the rules at issue in this case (cited in Section 6) were created more than a year ago, and the defendants have had ample time to interpret them.

69. In fact, the "character and fitness" test for state bar applications in its current form dates from around 1928.

70. On information and belief, defendants have a history of using abovesaid rules to engage in censorship, and to deny admission to the bar to individuals based on "offensive" conduct, as well as speech, expression or opinion.

IX.  SOME NEW MATERIAL IN THE FIRST AMENDED COMPLAINT

71. In this First Amended Complaint (herein after FAC), plaintiff, the pro se bar applicant, has added as Defendants the present and recent past judges of the New York Court of Appeals, the justices of the appellate division of the New York Supreme Court for the First Department, named officials of the Board of Law Examiners, named and unnamed officials of the Committee on Character and Fitness for the First Department, and the attorney for the Committee on Character and Fitness, and has clarified that he might seek liability against all defendants in both their official and individual capacity.

72. Plaintiff also clarifies that the challenged rules also violate the Privileges and Immunities clause of Article IV, Section 2 of the U.S. Constitution.

73. I hereby allege that on information and belief, the character and fitness test changed in a dangerous, quietly insidious, and flagrantly Unconstitutional way some time between 1970 and

2003, as the regulator attempted to consolidate more tyrannical power, and began to impose on applicants the burden of proving their moral qualifications by clear and convincing evidence.

74. I submit that the right to practice law is a liberty, and a property, interest protected by the Fifth and Fourteenth Amendments and other sources of Constitutional law.

75. My second challenge to the Illinois rule in 2014 was dismissed due to lack of standing.

76. I add that my New York bar application has now been pending for 41 months.

77. I allege that the regulations cited in para. 58-62 are facially Unconstitutional.

78. To say that the state has the power to require high moral standards of bar applicants is not the same thing as saying that the state can put the burden of proof on the bar applicant. They can be as tough as John Wayne if they want to, but they can't violate the due process clause.

79. The state regulator defendants in this case, like those in other states, share a history of discriminating against political minorities, because the American Bar Association created Law Day in 1958, and superimposed it over May Day, an anarchist and communist holiday created after the violent Haymarket events in Chicago in 1886.

80. The Illinois regulators were involved in several programs in which they systematically used the character and fitness test to Unconstitutionally discriminate against women like Myra Bradwell, and political minorities like George Anastaplo and Matt Hale.

81. Around 2002, I heard or read somewhere that the last-referenced bar applicant, Matt Hale, a now-incarcerated former bar applicant who had been denied admission in Illinois, according to some, for racist advocacy, was going to apply for an attorney's license in New York.

82. I personally experienced the aftermath of the chilling effect of the Unconstitutional rules challenged herein, when in 2001 I broke off a marital engagement with my late ex-fiancee Gina, with whom I had been living for several years, because I was afraid the Committee would deny

me admission to the bar, either openly or covertly and for pretextual reasons, because of the Committee's potential prejudice against Gina's revolutionary beliefs and associations.

83. "Only standards limiting the licensor's discretion will eliminate this danger by adding an element of certainty fatal to self-censorship... Second, the absence of express standards makes it difficult to distinguish, 'as applied,' between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power. Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression." City of Lakewood v Plain Dealer, 486 U.S. 750, 758 (1988).

84. And anarchism is a beautiful thing.

85. I love and miss the secular anarchist movement, from which I have been separated for more than 20 years, which I regard as sort of my "alma mater," because (since I had a traumatized childhood and moved around frequently), when other teenagers were forming love for their high schools or sports teams, I was forming a love for anarchism.

86. I also love the punk anarchist movement's anti-sexism training, and, among other things, the Alternative Tentacles Divine Light Mission.

87. I miss and long for the non-religious anarchist movement's anti-proms, its songs about bicycles, and vegetarian barbecues.

88. It is no speculation to say that the bar applicant in the Anonymous case (para. 63) was denied admission to the bar in part because he offended someone, according to the very terms of the Committee's opinion.

89. I have one or more close friends who were associated with the secular anarchist movement, who I have not spoken to for more than 20 years, because I fear I will be treated disfavorably by the defendant regulator if I do.

90. I fear not only explicit disfavorable treatment by the Committee, but also covert, or sub rosa, discrimination- in other words, that other non-political "character and fitness issues" will be used as a pretext to deny me admission to the bar.

91. I am also afraid the defendant regulator will retaliate against me just for challenging their rules, and just for not doing whatever they say.

92. Soon after I am sworn in as a lawyer, if ever, I intend to try to reach out to one or more of the old friends described in para. 89 above.

93. I still say this case is not about anarchism, so much as about the liberation of all of my fellow bar applicants, and the whole profession, including those who have no interest in politics whatsoever, and, just everyone.

94. I love my fellow bar applicants very much, and I feel a moral obligation to liberate them from the Committee's misconceptions about entry into the profession.

95. If I am something of an anarchist, then let this victory, if any, be a gift from an anarchist to the legal profession: the gift of your own liberation.

96. This gift extends even to our profession's judges, many of whom submit character and fitness applications upon graduating from law school.

97. My gift extends even to those bar applicants who could and would have had a license for the asking, because now you will be free to have the pleasure of knowing what it feels like to live in a free society.

WHEREFORE, Plaintiff, John J. Otrompke, JD, hereby requests this honorable court to order Defendants to admit Plaintiff to the New York bar; declare the above-cited rules Unconstitutional on their face and as-applied in violation of Privileges and Immunities clause of Article IV, Section 2; the Fifth, Fourteenth, and First Amendments; and the ex post facto and bill of attainder clauses of the United States Constitution; not to dismiss without making a decision on abstention, to permit some discovery; to require Defendants to answer this complaint; and for filing fees and court costs; and such other good and appropriate relief as this Honorable Court may allow.

Respectfully submitted,

John Otrompke, JD
PO Box 90
NY NY 10276
John_Otrompke@yahoo.com
(o) 347-475-0561
(c) 848-466-1173

John Otrompke