```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JOHN J. OTROMPKE,                                           :
                                    Plaintiff,              :
                                                            :           22 Civ. 4676 (LGS)
              -against-                                     :
                                                            :           OPINION & ORDER
THE FIRST DEPARTMENT COMMITTEE ON                           :
CHARACTER AND FITNESS, et al.,                              :
                                    Defendants.             :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Before the Court is the Report and Recommendation (the "Report") of the Honorable James L. Cott, which recommends (1) granting Defendants' motion to dismiss the Third Amended Complaint ("TAC") and (2) denying pro se Plaintiff's motions for leave to amend the TAC, to file a sur-reply and to supplement his opposition to Defendants' motion to dismiss. The Court agrees with the Report's conclusion that the federal courts lack subject matter jurisdiction to adjudicate Plaintiff's claims because of the lack of a legally cognizable injury-in-fact. The relevant portions of the Report are adopted. Plaintiff's objections to those portions are overruled. The Report's recommendation to grant Defendants' motion to dismiss and deny Plaintiff's motions is adopted. However, the dismissal is without prejudice because it is based on lack of jurisdiction.

**I.    BACKGROUND**

This decision assumes familiarity with the factual background and procedural history, which are summarized in the Report. *See generally Otrompke v. First Dep't Comm. on Character & Fitness*, No. 22 Civ. 4676, 2023 WL 7399840, at *1 (S.D.N.Y. Nov. 8, 2023).

The TAC challenges as unconstitutional Section 90 of the New York State Judiciary Law, and other state statutes and court rules governing attorney admission to the New York State Bar. The TAC assails the proposed hearing on Plaintiff's Bar application before members of the First Department Committee on Character and Fitness (the "Committee"). The TAC alleges that the hearing will be procedurally flawed because (1) Plaintiff will have had insufficient notice of any issues to be raised at the hearing beyond those already identified; (2) three rather than all members of the Committee plan to attend the hearing and (3) Plaintiff fears the Committee will require him to satisfy a clear and convincing standard of proof, while he believes that burden properly should be placed on the Committee. The TAC asserts violations of the Privileges and Immunities Clause of Article IV, Section 2; the First, Fifth and Fourteenth Amendments; and the Ex Post Facto and Bill of Attainder clauses of the United States Constitution and seeks relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

This action was referred to Judge Cott for all purposes except trial. Defendants filed a motion to dismiss the TAC. The Report recommends dismissing the TAC with prejudice because: (1) Plaintiff lacks Article III standing; (2) a federal court should abstain from deciding this case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); (3) Plaintiff's claims against state-court officials are barred by the Eleventh Amendment and judicial immunity doctrines; (4) Plaintiff has failed to state plausible claims upon which relief can be granted and (5) granting Plaintiff further leave to amend would be futile.

Plaintiff filed five objections to the Report at Dkt. Nos. 109, 110, 111, 112 and 114, and one letter alleging unfair delay in the resolution of this case at Dkt. No. 113. Only one objection was timely filed. This Opinion considers all objections (collectively, the "Objection"), both timely and untimely.

## II.   DISCUSSION

### A.  Standard of Review

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections, the court reviews *de novo* those portions of the report and recommendation to which objection is made. *Id.*; Fed. R. Civ. P. 72(b)(3). However, "when a party makes only conclusory or general objections, or simply reiterates [their] original arguments," the court reviews the report and recommendation strictly for clear error. *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014);[1] *see also Bailey v. U.S. Citizenship & Immigr. Servs.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings . . . do not trigger *de novo* review."). "[A] district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Sheinfeld v. B. Braun Med.*, No. 23 Civ. 1622, 2024 WL 1075329, at *1 (S.D.N.Y. Mar. 12, 2024); *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).

For those portions to which no such objection is made, a district court need only satisfy itself that there is no clear error on the face of the record. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 & n.4 (2d Cir. 2022). The district court "may adopt those portions of the report to which no 'specific[] written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

3

law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). A finding is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001).

"*Pro se* parties are generally accorded leniency when making objections." *Pinkney v. Progressive Home Health Servs.*, No. 6 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008). "Although *pro se* plaintiffs should be granted special leniency regarding procedural matters, a lawyer representing himself ordinarily receives no such solicitude at all." *Zappin v. Doyle*, 756 F. App'x 110, 111 n.1 (2d Cir. 2019) (summary order). Even viewed with solicitude, "a *pro se* party's objections to a [r]eport and [r]ecommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Rashid v. O'Neill-Levy*, No. 23 Civ. 2670, 2024 WL 687289, at *3 (S.D.N.Y. Feb. 20, 2024).

### B. Standing

Plaintiff lacks standing to assert his claims because, as the Report found, Plaintiff has failed to show that he suffered a legally cognizable injury-in-fact sufficient to confer standing. The Objection asserts "two separate theories of standing": "facial invalidation, supported by *Wadmond* and *Santosky*" and "a *Loudermill* claim justifying declaratory judgment." Neither theory is sufficient to establish standing. Accordingly, this case is dismissed without prejudice.

#### 1. Law Governing Article III Standing

Article III limits the subject-matter jurisdiction of the federal courts to "Cases and Controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). "Standing to sue is a doctrine

4

rooted in the traditional understanding of a case or controversy [and] developed . . . to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Id*. at 338.  A "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 42 (2d Cir. 2015). Without standing, the court lacks subject matter jurisdiction and the authority to adjudicate the merits.  *See Fac., Alumni, and Students Opposed to Racial Preferences v. N.Y. Univ.*, 11 F.4th 68, 78 (2d Cir. 2021) ("*Fac.*").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Dismissals for lack of standing must be without prejudice.  *See Fac.*, 11 F.4th at 78.  The party invoking federal jurisdiction has the burden of establishing standing.  *See id.* at 74.  To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.  The injury-in-fact must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Fac.*, 11 F.4th at 75.

### 2. Standing to Challenge a Facially Invalid Rule

Plaintiff's first theory of standing is that the usual standing requirements are "relaxed in the context of a facially invalid rule."  Specifically, he alleges that the purported law that places the burden of proof on a bar applicant to demonstrate fitness by clear and convincing evidence is facially invalid as a violation of due process.  Plaintiff argues that he has standing to make this challenge based on *L. Students C.R. Rsch. Council, Inc. v. Wadmond*, 401 U.S. 154 (1971).

This argument is unpersuasive.  Plaintiff lacks standing to challenge the bar admission burden of proof for several reasons:  (1) it is unclear what law is alleged to be facially invalid and whether it even exists; (2) if it does exist, it has not been applied to Plaintiff because he has

not participated in any hearing and no decision has been made that he failed to satisfy any burden of proof; (3) Plaintiff therefore has not suffered any injury-in-fact as required for Article III standing; (4) the relaxed standing requirement to which Plaintiff refers does not apply in this case; (5) even if the relaxed standing requirement did apply, it does not excuse the requirement for an injury-in-fact and (6) Plaintiff misunderstands *Wadmond* and the other cases on which he relies.

First, as to the law that is alleged to be facially invalid, the TAC challenges "[t]he state rules, laws and proceedings [that] on information and belief . . . place the burden of proof on the bar applicant by clear and convincing evidence." The failure to identify the law in question and the pleading "on information and belief" demonstrate that Plaintiff does not know what, if any law, imposes the offending burden. The TAC identifies, quotes and alleges to be unconstitutional several provisions of New York law and First Department court rules. But none of them references any burden of proof. The TAC merely states that Plaintiff received a Notice of Hearing that "advised that the burden of proof as to an applicant's character and fitness for admission to the New York State Bar . . . rests upon the applicant," and Plaintiff "fears that the Committee will require him to" satisfy a standard of "clear and convincing evidence" at the hearing. The TAC does not identify what law is challenged as facially invalid for purportedly imposing on applicants the burden of showing fitness by clear and convincing evidence.

Even if the TAC had sufficiently identified the challenged rule, Plaintiff has not suffered any injury-in-fact from the imposition of a clear and convincing burden of proof. He has not participated in any hearing. No decision applying a burden of proof has been made on his Bar application. Most important, his application has not been denied on the basis that he has not shown by clear and convincing evidence that he is qualified. Plaintiff has not shown "an injury-

6

in-fact." *See Spokeo*, 578 U.S. at 339.  Any injury here is "conjectural and hypothetical" rather than "actual or imminent."  *See Fac.*, 11 F.4th at 75.

Plaintiff is required to have suffered an injury-in-fact because that requirement is not excused here.  The relaxed standing requirement for facial invalidity challenges upon which Plaintiff relies does not apply to the TAC's due process claim challenging a Bar applicant's burden of proof.  The relaxed standing requirement for facial invalidity challenges applies specifically to certain First Amendment challenges because of unique concerns about freedom of speech.  *See, e.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988) ("in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship," particularly self-censorship); *Freedman v. Maryland*, 380 U.S. 51, 57 (1965) (relying on the "danger in the [state] apparatus of censorship -- one always fraught with danger and viewed with suspicion -- gives [plaintiff] standing to make that challenge"); *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) ("Proof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemination of ideas."); *see also, e.g.*, *Antonyuk v. Chiumento*, 89 F.4th 271, 308 (2d Cir. 2023) (concluding that plaintiff who had not applied for a handgun license had standing to challenge licensing requirement to disclose social media accounts, "lest he be forced to self-censor").

Even if this relaxed requirement for standing applied, a plaintiff still must have suffered an injury-in-fact in order to have standing to assert a claim.  "[T]hat doctrine [which "permits a plaintiff to plead a facial First Amendment challenge to a statute with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity"] does not absolve the plaintiff of the initial

7

obligation to plead the injury in fact required for standing." *Brokamp v. James*, 66 F.4th 374, 390 (2d Cir. 2023). The Second Circuit explained, "[r]elaxing the general prudential rule against third-party standing, the [First Amendment] overbreadth doctrine permits a plaintiff to represent the legal interests of parties not before the court when seeking facial invalidation of a statute under the First Amendment, if certain conditions are met." *Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013). However, this doctrine does not affect the Article III standing requirement of an injury-in-fact. "[T]he overbreadth doctrine speaks to whose interests a plaintiff suffering Article III injury may represent. It does not provide a reason to find such injury where none is present or imminently threatened in the first instance." *Id*.

Plaintiff's reliance on *Wadmond* is misplaced. *Wadmond* was a First Amendment case in which standing presumably was based on the same principles as above. The plaintiffs in *Wadmond* made "a broad attack, primarily on First Amendment vagueness and overbreadth grounds" to the loyalty oath that is a part of the New York Bar screening process. *Wadmond*, 401 U.S. at 157, 161. The court did not explicitly address standing but noted that there was no claim that any applicant had unjustifiably been denied permission to practice law, and the thrust of the lawsuit was that the challenged rule "works a chilling effect upon the free exercise of the rights of speech and association of students who must anticipate having to meet its requirements." *Id*. at 159.

In contrast, Plaintiff does not make a First Amendment challenge. The TAC does not challenge Bar admission rules that implicate First Amendment interests. It does not allege that the Committee inquired into Plaintiff's political membership or associations. The TAC states only that Plaintiff "associated with some anarchists in December of 2021, . . . and would like to do so again." That statement concerns Plaintiff's own intentions, not the Commission's activity.

The TAC, particularly the challenge to burden of proof to which Plaintiff's first theory of standing is addressed, implicates due process, not freedom of speech or freedom of association.

*Wadmond* does not support the proposition that a relaxed standing requirement applies to Plaintiff's due process challenge to burden of proof for his Bar application. Plaintiff points to *Wadmond*'s dictum that the Bar rule could be read to require "an applicant to furnish proof" in support of the loyalty oath, and as such could raise constitutional questions "as to the burden of proof permissible in such a context under the Due Process Clause." *Id*. at 162. The language is dictum because these questions as to burden of proof did not materialize because appellees construed the rule to place no burden of proof on applicants. In any event, this language at most is pertinent to the merits of Plaintiff's claim (which *Wadmond* confirms rises under the Due Process Clause), and not to his standing to assert the claim.

Similarly, Plaintiff relies on *Santosky v. Kramer*, 455 U.S. 745 (1982), to support his assertion of relaxed standing requirements in his case, but *Santosky* did not address standing. *See id.* at 747-48 (holding that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence"). Standing was not an issue because the petitioners had suffered a clear injury-in-fact; their children had been taken from them by the State, and after a hearing, a Family Court Judge had ordered permanent termination of the parents' custody. *See id.* at 751-52.

Plaintiff also cites *Antonyuk v. Bruen*, 624 F. Supp. 3d 210 (N.D.N.Y. 2022), which is a district court case and therefore not binding, and in any event is inapposite. *See id.* at 234-37 (holding, as relevant to standing, that plaintiff Antonyuk did not have standing to challenge a law not yet in effect because he had not sufficiently shown an intent to engage in proscribed conduct

9

and a credible threat of prosecution). That case later was refiled and appealed to the Second Circuit. On appeal, the Second Circuit addressed the plaintiff's standing to challenge a licensing requirement before his application was denied and held that "challenging a rule that limits eligibility for a license is different from challenging a component of the application process itself." *Antonyuk v. Chiumento*, 89 F.4th 271, 309 (2d Cir. 2023) (emphasis omitted). To establish standing to challenge an eligibility requirement in the absence of a denial, a plaintiff must demonstrate futility. *See id.* at 310. To establish standing to challenge an application requirement, a plaintiff must allege an injury-in-fact that "flows from the application itself." *Id.* Here, Plaintiff has failed to show standing under either framework.

First, Plaintiff has failed to show that his Bar application is futile. To show futility, a litigant must make a "substantial showing" that he will be denied the license he seeks. *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012). In other words, denial must be "preordained." *Antonyuk*, 89 F.4th at 310. Plaintiff's subjective belief that his application will be denied is insufficient to establish futility. *See, e.g.*, *Decastro*, 682 F.3d at 164 (futility not shown by an anonymous statement that the plaintiff's application would be denied and by a report showing the infrequency of applications granted). Plaintiff's allegation that his application has been delayed unjustly is insufficient to show futility. *See Antonyuk*, 89 F.4th at 310 ("[D]elays in receiving a decision do not render an application futile.").

Second, Plaintiff has failed to show any injury sufficient to confer standing that stems from the application process itself. In *Antonyuk*, the Second Circuit held that the plaintiff had standing to challenge certain disclosure requirements to apply for a handgun license because he would suffer an injury-in-fact to his speech and privacy rights if he were forced to comply. *See id.* at 308. Here, Plaintiff identifies an alleged procedural due process violation, but a procedural

10

violation is insufficient on its own to create an injury for standing purposes. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."). Plaintiff's argument that he is injured by his refusal to attend a hearing that imposes an unconstitutional burden of proof is factually inconsistent with the TAC: "Plaintiff postponed the meeting with the three members of the Committee and their attorney, to address those present concerns of which he has notice [seeking employment, paying his tax creditors and contacting the Lawyers Assistance Program], and to figure out where to bring his as-applied Constitutional challenge." In addition, in *Antonyuk*, the challenged statute explicitly required disclosure as part of the application process. *See* 89 F.4th at 305-06. Here, it is unclear whether Plaintiff must satisfy a clear and convincing standard of proof at the hearing.

To the extent Plaintiff challenges the character and fitness requirements generally as void for vagueness, that challenge is precluded by *Wadmond* itself. *Wadmond* rejected a vagueness challenge to New York's character and fitness requirements for admission to the bar. *See* 401 U.S. at 159. The Supreme Court stated that it "had no difficulty" in "finding no constitutional infirmity in New York's statutory requirement that applicants for admission to its Bar must possess the character and general fitness requisite for an attorney and counsellor-at-law." *Id*.

### 3. Alleged Injury and Standing Based on the Lapse of Time

In the Objection, Plaintiff's second theory of standing is that he sustained an injury under *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985), "based on the lapse of time in which he was not offered a hearing that comports with due process." In *Loudermill*, the Supreme Court stated that, after an employee is terminated, due process requires a post-termination hearing "at a meaningful time," but held that the nine-month delay in that case did not amount to a

11

constitutional deprivation. *Id*. at 547. Plaintiff's argument in substance is that Defendants' misconduct caused him to suffer an injury-in-fact because the prospect of an unconstitutional hearing caused Plaintiff to refuse to participate, thereby causing an unconstitutional delay. This argument is factually and legally incorrect.

First as to the facts, by proffering the delay in his Bar hearing as the basis for standing, Plaintiff in effect is arguing that the delay is an injury that is "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 578 U.S. at 337 (requiring a causal relationship between the injury and defendant's conduct). However, the TAC states that Plaintiff postponed the hearing for his own reasons independent of the alleged constitutional violations -- to remedy issues that likely would be raised at the hearing: "Plaintiff postponed the meeting with the three members of the Committee and their attorney, to address those present concerns of which he has notice [seeking employment, paying his tax creditors and contacting the Lawyers Assistance Program], and to figure out where to bring his as-applied Constitutional challenge." Even if Plaintiff's refusal were based on the alleged unconstitutional nature of the hearing, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Any alleged injury resulting from delay in the hearing process is traceable to Plaintiff's -- not Defendants' -- actions and does not confer standing. As discussed above, Plaintiff's challenge is fundamentally a due process challenge and not a First Amendment challenge, and therefore is not the type of case in which courts historically have recognized an injury from deterring protected First Amendment conduct.

### C. Other Parts of the Report

Because the Court lacks subject matter jurisdiction, this decision does not address the portions of the Report pertaining to the merits of the claims in the TAC.

## III. CONCLUSION

For the foregoing reasons, the Objection is **OVERRULED** and the Report's recommendation to dismiss the case is **ADOPTED**. Because dismissal is based on lack of jurisdiction, dismissal is without prejudice. The Report's recommendation to deny Plaintiff's motions for leave to amend the TAC is **ADOPTED** because any further challenge to the Committee's hearing procedures would be futile for lack of jurisdiction as explained above. Dismissal without prejudice means that Plaintiff is free to refile his claims in state court.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 81, 88, 106, 107, 109, 110, 111, 112 and 114, and to close this case.

Dated: March 22, 2024
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

13